UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | | Date | January 26, 2021 |
|---|---|---|---|---|
| Title | Mohamed Seirafi v. City of Riverside et al | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Not Present                    Not Present

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION FOR SUMMARY
                     JUDGMENT (Dkt. 59, filed on November 15, 2021)

## I.     INTRODUCTION

On October 25, 2019, plaintiff Mohamed Seirafi filed this action against
defendants City of Riverside, a municipal corporation, and James Perry, in his individual
capacity. Dkt. 1. ("Compl."). Seirafi's initial complaint alleged that he was
discriminated against in connection with a real estate development project he applied to
develop in the City of Riverside, and asserted the following claims for relief: (1) violation
of equal protection under the Fourteenth Amendment (42 U.S.C. § 1983), against Perry;
(2) supervisorial liability (42 U.S.C. § 1983), against Perry; and (3) Monell claim (42
U.S.C. § 1983), against the City of Riverside. Id.

On January 21, 2020, defendants Perry and City of Riverside ("City" or
"Riverside") moved to dismiss Seirafi's initial complaint. Dkt. 18. On February 24,
2020, the Court granted defendants' motion to dismiss without prejudice, finding that
plaintiff's claims for relief were time-barred, and stated that plaintiff "shall file an
amended complaint within thirty (30) days." Dkt. 21.

On March 25, 2020, Seirafi filed a first amendment complaint ("FAC"), alleging
the same three claims for relief. See Dkt. 23 (FAC).

On April 23, 2020, Perry and the City ("defendants") moved to dismiss the FAC.
Dkt. 31. On May 26, 2020, the Court denied defendants' motion to dismiss, finding that
the FAC "allege[s] sufficient facts to show that defendants are equitably estopped from
asserting a statute of limitations defense." Dkt. 34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|----------------------|------|------------------|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

On November 15, 2021, defendants filed a motion for summary judgment. Dkt. 59 ("Mot."). Defendants also submitted a separate statement of undisputed material facts in support of their motion. Dkt. 60 ("SUF"). On November 22, 2021, plaintiff filed his opposition (Dkt. 62 ("Opp.")) and statement of genuine disputes of fact (Dkt. 62-1 ("GDF")). On November 29, 2021, defendants submitted their reply (Dkt. 63 ("Reply")) and a response to the facts disputed by plaintiff (Dkt. 63-1 ("SUF Reply")). On November 30, 2021, defendants submitted evidentiary objections to plaintiff's opposition evidence. Dkt. 64 ("Def's Evid. Objs.").

The Court held a hearing on December 13, 2021. At the hearing, the Court ordered additional briefing with respect to the parties' statute of limitations and equitable estoppel arguments. Dkt. 66. Plaintiff filed his supplemental brief on December 20, 2022. Dkt. 67 ("Plf's Supp."). Defendant Perry filed his supplemental brief on December 22, 2022. Dkt. 68 ("Defs' Supp.").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[1]

---

[1] Defendants "assert evidentiary objections to all of plaintiffs' counterstatement of facts contained in his opposition brief that are not contained in his [statement of genuine disputes of material fact] as required by L.R. 56-2." Reply at 9; see also Def's Evid. Objs. at Obj. Nos. 4-33. While plaintiff undoubtedly failed to comply with L.R. 56-2 by submitting additional material facts and supporting evidence in his opposition brief rather than in his statement of genuine disputes of material fact, which made it more difficult for the Court to analyze plaintiff's factual contentions and supporting evidence, the Court finds that striking plaintiff's additional material facts and supporting evidence based on this failure would be unduly prejudicial. Accordingly, defendants' motion to strike plaintiff's counter-statement of facts is **DENIED**. Otherwise, defendants assert numerous other evidentiary objections to plaintiff's evidence, including that it is irrelevant, that it is hearsay, that it lacks personal knowledge, that it lacks proper foundation, or that it lacks proper authentication. See Def's Evid. Objs. "In motions for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|---|---|---|---|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

### A.   The Parties and Relevant Actors

Plaintiff "was the owner of four parcels of land consisting of approximately 10 acres located at 3280 La Sierra Avenue, Riverside, California ("Property")."  SUF No. 1; Opp. at 6.[2]  "Plaintiff's son, Ahmed Seirafi ("Seirafi"), was personally involved in Plaintiff's entitlement application to develop the Property ("Application") from 2012 to the present."  SUF No. 3.  "During the pendency of this lawsuit, Plaintiff became ill and his son, Seirafi, became legal guardian and is now prosecuting Plaintiff's action."  Id. No. 4.  On October 4, 2021, plaintiff passed away.  Id.  Accordingly, "Seirafi is currently the trustee of Plaintiff's estate and the substituted Plaintiff in this action."  Id.[3]

"Beginning in 2012, Plaintiff assembled a team of professionals to assist him in developing the Property to consist of a fueling station, convenience store, car wash, commercial retail space, and senior housing (the "Project")."  Id. No. 5.  Plaintiff's team included property development professionals Tom Hunt, Andrew Walcker, and Jim Broeske.  Id. No. 6.  Between 2012 and early 2017, Hunt, Walcker, and Seirafi spoke to the City of Riverside and councilmember James Perry on behalf of plaintiff regarding the development of the property.  Id. No. 7.

"The City [of Riverside] is a California Charter City."  Id. No. 28.  "The City Charter expressly defines the form of government, and the source and scope of authority of the City's elected officials, officers, employees, boards, and commissions."  Id. No.

---

summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised."  Capitol Records, LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 (C.D. Cal. 2010).  This is especially true where, as here, many of the objections are "boilerplate" and made without analysis or argument.  Id.  To the extent that the Court relies on objected-to evidence, it has considered and **OVERRULED** defendants' applicable evidentiary objections because the objected-to-evidence is relevant and admissible.  Evidence not considered by the Court is not addressed.

[2] As previously noted, plaintiff embedded a "Counter Statement of Facts" in his opposition brief.  See Opp. at 6-9.  Accordingly, the Court refers to plaintiff's opposition brief, and the evidence cited therein, in the "Factual Background" section of this order.

[3] The Record does not reflect that Ahmed Seirafi was formally substituted for plaintiff Mohamed Seirafi.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | | Date | January 26, 2021 |
|---|---|---|---|---|
| Title | Mohamed Seirafi v. City of Riverside et al | | | |

29. "The City has a Council-manager form of government that consists of a governing body of seven (7) Councilmembers elected from seven (7) geographically determined political wards." Id. No. 30. "The [City Council] makes all laws and regulations in respect to municipal affairs including ordinances and resolutions and directs City staff to enforce [the] same." Id. No. 31.

"Councilmember Perry was elected as Councilmember for Ward 6 to the City Council [] on June 4, 2013[,] and his election result was certified by the City Clerk on June 18, 2013." Id. No. 11. "Steve Hayes, Kyle Smith, Brian Norton, Ted White, Mary Kopaskie-Brown, Diane Jenkins, and Gabriel Perez were employees in the City's Planning Department." Id. No. 12. "Emilio Ramirez (2013-2017) and Raphael Guzman (2017-2019) were the Directors of Economic and Community Development for the City." SUF No. 12. "Kristi Smith, Gary Guess, and Greg Priamos were attorneys for the City and Councilmember Perry." Id. "Al Zelinka held various employment positions the City including Director of Economic and Community Development (2012-2015), Assistant City Manager (2015-2018), and City Manager (2018-present)." Id. No. 13.

"Councilmember Perry ran for public office for the first time in 2012." Id. No. 60. "During the election race, Councilmember Perry spent a considerable amount of campaign time listening to the issues facing Ward 6 constituents." Id. No. 61. He "learned that high density urban housing was extremely disfavored" and "that the community desired more park space." Id.

### B.   Riverside's Land Use Application Laws and Processes

"The procedural rules for developing property in the City are contained in the Riverside Municipal Code ("RMC"), relevant state statutes, ordinances and resolutions of the [City Council]." SUF No. 32. "To help applicants streamline the process, the City offers, upon request, informal pre-application, in-application and/or pre-decision voluntary, iterative meetings with staff, inter and intra agencies, the applicant, and any other interested stakeholders (including councilmembers) to share respective viewpoints concerning the proposed or pending application that may create potential issues that could impair the application's approval." Id. No. 36.

The formal application for "property development requests of the type at issue in this lawsuit are initiated with a written application to the City's Planning Department for action." Id. No. 38. "The review of entitlement applications requires specific, often

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|------------------------|------|-------------------|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

statutory, third-party communications, and intra-departmental/inter-agency plan reviews." <u>Id.</u> No. 39. "The Planning Department compiles comments from these departmental/agency reviews and provides notice of exception items to the applicant who reviews the comments and resubmits their plans after addressing the comments." <u>Id.</u> No. 40. "Once an application of the Plaintiff's type is 'deemed complete,' the application is noticed for public hearing before the [Planning Commission]." <u>Id.</u> No. 41. "This process must occur within a specified number of days. Otherwise, the pending unapproved application is deemed approved by operation of law." <u>Id.</u> No. 42. "After a public hearing is noticed before the [Planning Commission], the City's Planning staff will prepare a staff report evaluating the pending application with a recommended course of action made to the [Planning Commission]." <u>Id.</u> No. 43.

"The [Planning Commission] then conducts a public hearing; and, after taking into consideration the staff report, public comments, and other relevant information, [the Planning Commission] will recommend a course of action to [City Council]." <u>Id.</u> No. 44. The Planning Commission's "recommended course of action may or may not align with the City staff's recommended course of action." <u>Id.</u> No. 45. "City staff will compile another staff report to [City Council] that includes the outcome of the [Planning Commission] hearing." <u>Id.</u> No. 46. "The pending application will then be noticed for public hearing before the [City Council] where a hearing will be held, and a vote taken on whether to approve the application and the conditions of that approval." <u>Id.</u> No. 47.

"The applicant has a public forum at both the [Planning Commission] hearing and the [City Council] open session to comment on the application." <u>Id.</u> No. 48. "Afterwards, the applicant has the option to modify the conditions of the approved application upon the filing of a written application with Planning." <u>Id.</u> No. 49. "Any modification application will proceed through the same process to ultimately be decided by [City Council]." <u>Id.</u> No. 50.

### C.    The 2013 Housing Element

On July 24, 2012, the City certified its Housing Element for the 2006-2014 cycle (the "2013 Housing Element" or "2013 HE"). SUF No. 14. "The Housing Element requires local counties and cities to prepare and implement certain housing goals under Gov't Code 65580, <u>et. seq.</u>" <u>Id.</u> "The Property was included in the City's 2013 HE as an eligible candidate for favorable housing density rezoning." <u>Id.</u> No. 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|------------------------|------|------------------|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

On June 17, 2013, the City sent Plaintiff a letter that stated that "we are aware of your current development application with the City for a service station on a portion of the property and wish to coordinate this proposal with your application." Dkt. 61-38 (6/17/13 Letter from the City to plaintiff). However, plaintiff did not respond to the City's letter. SUF No. 16. "On October 22, 2013, [City Council] had a public hearing on the rezoning of eligible properties in the 2013 HE." Id. No. 22. City Council adopted the recommendation of the Planning Commission, "and only rezoned [] three (3) properties eligible for rezoning in the 2013 HE." Id. Plaintiff's Property was not one of the three properties rezoned pursuant to the 2013 Housing Element. Id.

While it is undisputed that plaintiff did not express interest in pursuing the 2013 Housing Element rezoning advantages, plaintiff contends this is because "the proposed rezoning would not have permitted Plaintiff to pursue the project he envisioned." GDF No. 23; see also SUF No. 23. In turn, defendants contend that "the city would have assisted Plaintiff with the housing portion separate from the pending entitlement for the gas station." SUF Reply No. 23.

"On October 13, 2016[,] the City was sued for failure to fully implement the rezoning of the eligible properties in the 2013 HE." SUF No. 24. "That lawsuit was settled on March 27, 2017[,] with the City agreeing to a macro rezoning framework to complete the unfinished rezoning from the 2013 HE." Id. "Plaintiff had knowledge of the October 13, 2016 lawsuit concerning the failure to rezone the Property." Id. No. 25. "Plaintiff told Hunt and Robert Ziprick [Plaintiff's lawyer] on or before January 24, 2017[,] that he intended to institute legal action against Councilmember Perry for the same conduct claimed in this lawsuit." Id. No. 26. However, "[Ahmed] Seirafi convinced Plaintiff not to take legal action at that time because he felt another course of action would lead to a more favorable outcome to advance their property development objectives." Id. No. 27.

### D.    Plaintiff's Property Development Application

"Beginning in 2012 Plaintiff sought to develop the Property by building a fueling station, convenience store, car wash, senior housing, and commercial retail by forming a development team that worked actively with City Planning staff in a pre-application informal review of the Project." SUF No. 51. "In January 2013[,] Plaintiff elected to apply only for entitlement of the fueling station, convenience store, and gas station

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|----------------------|------|------------------|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

("Fueling Complex"), and build the remaining part of the Project at a later, unspecified time." Id. No. 52; Opp. at 6-7. "On January 28, 2013, City staff informed Hunt that the Project cannot be constructed in unspecified phases with no express timeline for completion." SUF No. 52.

"On or about March 4, 2013, the City received the Application for the Fueling Complex that was prepared and submitted by Hunt on behalf of Plaintiff." Id. No. 53. "The Application was deemed complete on or about February 11, [2014], and publicly noticed for a hearing at [the Planning Commission] on March 20, 2014." Id. No. 54.

On February 14, 2014, Walcker wrote to Perry "to let him know that Walcker and Hunt would like to speak with him about the application." Id. No. 55. "Councilmember Perry notified Zelinka of Walcker's meeting request and asked Zelinka and other City staff to attend the informal meeting." Id. No. 56. "The meeting occurred on March 11, 2014." Id.[4] At the meeting, Perry indicated that his constituents were opposed to high density multi-family housing. SUF No. 57; GDF No. 57; SUF Reply No. 57. On March 12, 2014, Walcker, on behalf of plaintiff, submitted a request to withdraw the Application from the March 20, 2014 Planning Commission docket. SUF No. 58; GDF No. 58.

Defendants contend that, at the March 11, 2014 meeting, "Councilmember Perry identified five concerns that caused him to withhold support for the Entitlement Application." SUF No. 66. These five concerns were:

- "(1) Safety. There were prior serious traffic accidents on the adjoining roads. There was a middle school close to the anticipated Fueling Complex that

---

[4] "Prior to the March 11, 2014, meeting, on November 8, 2013, Councilmember Perry conveyed to Hunt the problems with homeless encampments on the Property and the overgrowth of vegetation." SUF No. 64. These homeless encampments are on the property "on occasion" to this day. Dkt. 61-24 (A. Seirafi Depo. Vol. II) at 228:20-25. Plaintiff contends that "the homelessness problem has no bearing on the Project." GDF No. 64. Additionally, prior to the March 11, 2014 meeting, "[t]he City and Councilmember Perry became aware that some of Plaintiff's other apartment properties were the subject of complaints alleging disrepair and mismanagement." SUF No. 65.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|------------------------|------|------------------|
| Title    | Mohamed Seirafi v. City of Riverside et al | | |

- would attract pedestrian children crossing high traffic roadways. The Application did not fully address these safety concerns;

- (2) Ongoing Property Deterioration. There was a pattern of Property neglect where ongoing homeless encampments existed with indigent bathing in the RCFCD-owned flood control channel;

- (3) Complaints at Plaintiff's Other Properties. There were published complaints by Plaintiff's tenants in his other properties describing ongoing deterioration and failure to maintain the properties;

- (4) High-Density Disfavored. There was an oversaturation of excessive high-density multi-family development in Ward 6; and

- (5) Excessive Height. The Property was adjoined on two sides by single family homeowners who were opposed to an adjacent four (4) story building peering into their homes and property."

SUF No. 66. Additionally, "City staff [] identified conditions that would be recommended in order for City staff to recommend approval of the Application." Id. No. 67. Plaintiff contends that "Councilmember Perry insisted on several new conditions, which were included in the list compiled by City staff." GDF No. 67. At his deposition, Perry acknowledged that he requested that a public park be integrated into the project. Dkt. 62-23 (Perry Depo.) at 104:2-8. "Prior to Perry's election, City Staff did not request a publicly accessible park to approve the project." Opp. at 7.

"After several informal, collaborative meetings, Plaintiff, City staff, and Councilmember Perry agreed to a finite set of conditions that all could support when the Application was presented to [the Planning Commission] and [City Council]." SUF No. 68. "Zelinka suggested using a [development agreement] as the mechanism to ensure the Project was developed according to the agreed conditions." Id. No. 69. Seirafi contends that Plaintiff, his father, "only agreed to the conditions 'in principle,' but did not 'agree[] to make it happen for a matter of fact.'" Id. No. 70 (quoting Dkt. 61-24 (A. Seirafi Depo. Vol. II) at 232:2-9).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|------------------------|------|------------------|
| Title    | Mohamed Seirafi v. City of Riverside et al | | |

In any event, the conditions "were compiled by City staff and included in a Staff report recommending that [the Planning Commission] approve the Application subject to the agreed conditions." SUF No. 71. Afterwards, "[a] public hearing was properly noticed for July 3, 2014 to consider the Application at [the Planning Commission]." Id. No. 74. "Hunt, Walcker, and Zelinka appeared at the [Planning Commission] hearing and verbally expressed agreement to the conditions." Id. No. 75. "[The Planning Commission] concluded its hearing and deliberations on the Application with a recommendation to [City Council] to approve the Application subject to the agreed conditions." Id. No. 76.

Thereafter, "[a] public hearing was properly noticed before the [City Council] on August 12, 2014 to act on the Application." Id. No. 77. "Plaintiff appeared at the [City Council] hearing and affirmed his agreement to the conditions without objection." Moreover, "Plaintiff told Councilmember Perry prior to the [City Council] hearing that he was in complete agreement with the conditions to the Application." Id. No. 79. "At no time did Plaintiff or his representative object to the conditions of approval," although he did privately express his displeasure with the conditions to Hunt. Id. No. 103; GDF No. 103; SUF Reply. No. 103. "On August 12, 2014 [City Council] held a public hearing on the Application and voted to approve the Application subject to the agreed conditions." SUF No. 80.

"A written notice of the approval of the Application and the conditions were provided to Plaintiff on August 14, 2014. There were 96 conditions that attached to the approval." Id. No. 81. One of the main conditions at issue in this case is the "Agreement submission condition . . . [which] required that a Development Agreement be submitted by Plaintiff prior to the issuance of permits for the vehicle fuel station as follows:

'6. A Development Agreement shall be submitted to the City and approved by the City Planning Commission. The Agreement shall include, but not limited to the following items, subject to concurrence by the City and Developer:

(a) A maximum of 199 senior housing units should be provided;

(b) A minimum of 44,000 square feet of ground floor street oriented commercial/retail spaces should be provided;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|---|---|---|---|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

(c) A minimum of a 1 acre publicly accessible park with visibility and presence from La Sierra Avenue should be provided;

(d) Terms pertaining to the relocation/undergrounding of the existing flood control channels on the project should be provided;

(e) Provisions to mitigate impacts on neighboring properties and community infrastructure;

(f) The developers contribution toward funding system-wide community improvements;

(g) Compliance with required development standards and land use entitlement to include:

    1. An Amendment to the General Plan to change the General Plan land use designation of approximately 9.11 acres from O-Office and MSR-Medium Density Residential to MU-U – Mixed Use Urban;

    2. Amendment to the Municipal Code (Title 19) to rezone approximately 9.11 acres from the R-1-7000-Single Family Residential Zone to the MU-U Mixed Use Urban Zone;

    3. A Site Plan Review Permit and the Design Review of the plot plan and building elevations related to the proposed construction of a 199 unit multiple family residential developments, including commercial/retail tenant spaces, and a publically dedicated park; and

    4. A Conditional use Permit will be required if senior housing is contemplated.

(h) The timing of public improvements and development phasing.'"

SUF No. 82 (quoting Dkt. 61-47 (8/14/14 Decision re: Conditional Approval) ¶ 6). Shortly after City Council approved plaintiff's Application, Hunt's representation of plaintiff terminated and plaintiff "sought to challenge or renegotiate the conditions to the approval of the Application." SUF No. 83. At his deposition, Ahmed Seirafi stated that the conditions to the August 12, 2014 approval, including the reduction of the number of units allowed and the inclusion of a one-acre park, represented an obvious economic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|---|---|---|---|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

harm to the Project, and that plaintiff was aware of the economic harm at the time of the approval because he is financially savvy.  Dkt. 61-23 (A. Seirafi Depo. Vol. I) at 37:9-39:12.  Accordingly, "Plaintiff determined the conditions of approval made the Project unfeasible."  SUF No. 85.  On November 25, 2015, plaintiff met with the City to discuss the development agreement.  See Dkt. 67-2.  On July 28, 2016, Hunt provided defendants with a draft of the development agreement.  Dkt. 67-9.  However, plaintiff took no formal action on his Application until August 2016, "when he applied for an extension to satisfy the conditions of the approval."  SUF No. 86.

"The first time Plaintiff submitted the [development agreement] [to] Planning [for] review was August 28, 2017."  Id. No. 87.  An initial response to Plaintiff, which identified deficiencies in the submitted development agreement, was provided on January 22, 2018.  Id. No. 88.  Plaintiff never responded in writing to the deficiencies identified in the City's January 22, 2018 notice of deficiencies.  Id. No. 89; GDF No. 89.  Rather, "Plaintiff and Seirafi engaged in informal collaborative discussions with City staff and Councilmember Perry concerning their respective support of a modification request to the conditions of approval."  SUF No. 89.

In the end, "Plaintiff never submitted a complete set of written applications required by RMC for further processing of the Application" or "applied to modify the conditions of approval."  Id. Nos. 91-92.  Plaintiff blames this failure on Perry's "refusal to agree to a site plan, which made it impossible and impracticable to finalize the development agreement."  GDF No. 91.  Plaintiff contends that "[d]uring a June 2019 meeting among Plaintiff's son, Councilmember Perry, and the City's planning staff, Councilmember Perry refused to approve the location of the publicly-accessible park and again halted progress on the Project."  Opp. at 9 (citing Dkt. 62-9 (A. Seirafi Depo. Vol. I) at 169:3-170:10).

Defendants contend that "[a]t no time did City staff or Councilmember convey to Plaintiff or Seirafi that they had the power to approve his modification request."  SUF No. 93.  Moreover, they claim that "[a]t no time did City staff or Councilmember Perry conceal any facts from Plaintiff or Seirafi concerning the status of the Application or the HE."  Id. No. 94.  However, at his deposition, Ahmed Seirafi stated that before Ted White left the City at the end of 2017, he told plaintiff's lawyer Jonathan Shardlow that "I think I can get this done and approved" and "we're almost there . . . we have to get this pushed over the finish line . . . we're almost done."  Dkt. 62-17 (A. Seirafi Depo. Vol. II)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
| Title | Mohamed Seirafi v. City of Riverside et al | | |

at 297:2-23; 303:11-24.[5]  Moreover, at his deposition, Seirafi stated that he "received information that [the] property was excluded from the housing element . . . because it was already [in] a pending process or application within the city." Dkt. 62-9 (A. Seirafi Depo. Vol. I) at 184:6-185:20.  Plaintiff contends that this information was a "false represent[ation]" from the City Attorney in early 2018, although at his deposition Seirafi did not identify when or from whom he received the allegedly incorrect legal justification for the Property's exclusion from the housing element. Opp. at 18; Dkt. 62-9 (A. Seirafi Depo. Vol. I) at 184:6-185:20.

###    E.    Allegedly Disparate Treatment; Similarly Situated Projects

Plaintiff contends that "[a]fter Perry's election, he and the City demanded numerous concessions that were not imposed on other similarly situated projects," including "a reduction in density, a reduction in height, the addition of a public park, a development agreement, excessive setbacks, and further concessions that have not been required of other similarly situated projects in the City." Opp. at 7.  At his deposition, Hunt stated that the main difference in treatment was the development agreement, which was put in place "because [development of the Property] was going to be two phases, and the second phase was going to be housing density." Dkt. 62-8 (Hunt Depo. Vol. II) at 354:12-23.

At his deposition, Perry stated that he wanted the Project to be less dense than what was originally proposed, and that he personally raised this concern. Dkt. 62-23 (Perry Depo.) at 86:17-87:10.  He stated that this resulted in at least some of the proposed development "being fewer stories than what was originally proposed." Id.  Perry also requested that the public park to be included in the Project, even though he was not aware of any other developments where a Riverside council member has asked for a publicly accessible park. Id. at 103:5-104:15, 191:4-19.  Finally, Perry requested that the Project be limited to 150-175 housing units, but at his deposition Perry could not recall how he arrived at that number. Id. at 131:3-132:7.  Based on this testimony, plaintiff contends that "the density limitation imposed by Perry was arbitrary." Opp. at 7.  At his deposition, Perry also stated that he believed that plaintiff was not going to be able to fit a

---

[5] To the extent defendants object to this evidence as inadmissible hearsay, the Court finds that it is not offered for the truth of the matter asserted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
| Title | Mohamed Seirafi v. City of Riverside et al | | |

gas station, housing, retail space, and a park on the Property.  Dkt. 67-5 (Perry Depo.) at 99:7-21.

Plaintiff also contends that "[i]n October 2017, the City's Housing Element for 2014-2021 omitted Plaintiff's property, and thus his Project, from the mass rezoning of several other sites in the City of Riverside."  Opp. at 8.  However, it is undisputed that "[a]t no time did City staff or Councilmember Perry conceal any facts from Plaintiff or Seirafi concerning the status of the Application or the HE."  SUF No. 94.

Defendants contend that:

"The Property and the Project was both unique and unusual.  There are no other Applications that are similarly situated to Plaintiff's Application.  The Property was a 4-parcel unit that had a RCFCD-owned flood control channel running through it and across it.  Plaintiff sought approval for multiple zonings and multiple general plan amendments on single parcels.  The Application sought to develop 1-acre of the approximately 10-acre property with a fueling station, convenance store and car wash.  The remainder of the Property would be undeveloped until a later unknown time to be determined by Plaintiff.  Surrounding development included adjacent single-family developments, on two sides of the property—to the south, and west."

SUF No. 72.  While plaintiff purports to dispute this fact, he fails to demonstrate the existence of any factual dispute because he cites exclusively to a portion of Seirafi's deposition testimony wherein he discusses the City's representations regarding "mov[ing] the project forward," but does not discuss the nature of the Project, the nature of the Property, or any similarly situated properties or applications.  See GDF No. 72 (citing Dkt. 62-17 (A. Seirafi Depo. Vol. II) at 305:13-306:10).

Defendants also claim that the "Metro Gateways Apartments [project] is not a similarly situated application or property."  SUF No. 73.  Again, while plaintiff purports to dispute this claim, he cites only to deposition testimony wherein Seirafi discusses the City's representations regarding "mov[ing] the project forward," which fails to show the existence of a disputed issue of fact.  GDF No. 73 (citing Dkt. 62-17 (A. Seirafi Depo. Vol. II) at 305:13-306:10).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|------------------------|------|------------------|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

## III.  LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

### A.  Article III Standing

Under Article III of the Constitution, the Court's jurisdiction over a case "depends on the existence of a 'case or controversy.'" GTE Cal., Inc. v. FCC, 39 F.3d 940, 945

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|---|---|---|---|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

(9th Cir. 1994). A "case or controversy" exists only if a plaintiff has standing to bring the claim. Nelson v. NASA, 530 F.3d 865, 873 (9th Cir. 2008), rev'd on other grounds, 131 S. Ct. 746 (2011). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that their injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81 (2000); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Nelson, 530 F.3d at 873.

The heart of defendants' standing argument concerns the causal link between the alleged injuries and the actions of Councilmember Perry. See Mot. at 22-23. In sum, defendants argue that plaintiff was not injured because "he was never denied anything he formally requested." Id. at 22. Moreover, they argue that "Plaintiff's inability to develop the property was a situation of his own making by his own choices," and that "Defendants were not the cause-in-fact of his inability to develop the property." Id. at 23.

In opposition, plaintiff claims that "the record contains ample evidence showing that Plaintiff was injured by defendants' conduct," and that defendants' argument that Plaintiff cannot establish standing "because he never sought a formal decision with respect to the project" represents "a disguised ripeness argument this Court has already rejected." Opp. at 15. Plaintiff contends that "because of Councilmember Perry's interference, Plaintiff has not been able to complete the site plan and design review approvals, or finalize a development agreement." Id. As a result of this inability to finalize a development agreement, plaintiff claims that he has "incurred injuries including lost income and profits and has been deprived of the commercial use of his land due to Defendants' conduct, as identified in the Complaint, and his claims are therefore not barred by the standing doctrine." Id.

In reply, defendants argue that "[e]ven though the pleadings allege facts that could support harm, the admissible evidence establishes neither harm nor causation." Reply at 15. This is because "Councilmember Perry was one of a seven-person Council who collectively voted to approve the Application with the conditions requested by Plaintiff," and then, "Plaintiff determined the conditions were unfeasible and he took no action to apply for a modification of the conditions." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | | Date | January 26, 2021 |
|----------|------------------------|---|------|------------------|
| Title    | Mohamed Seirafi v. City of Riverside et al | | | |

The Court again finds that it has jurisdiction over plaintiff's claims. Even if plaintiff was never "denied anything he formally requested," the evidence suggests that Councilmember Perry imposed conditions on the Project, including the insertion of a public park and a development agreement, that were not imposed on the any other development project in the City of Riverside. At his deposition, Perry stated that he requested that the public park to be included in the project, even though he was not aware of any other developments where a Riverside council member has asked for a publicly accessible park. Dkt. 62-23 (Perry Depo.) at 103:5-104:15, 191:4-19. Perry also stated that he requested that the Project be limited to 150-175 housing units, although at his deposition Perry could not recall how he arrived at that number. Id. at 131:3-132:7.

The requirement that roughly 10% of plaintiff's property be earmarked for public use reduced the economic value of the project, as did conditions such as the reduction of the number of units allowed. As a result of these conditions, plaintiff determined that the project was "unfeasible." SUF No. 85. Moreover, to the extent defendants' argument is a disguised ripeness argument, plaintiff's project has not proceeded for several years due to conditions imposed by Perry such that "even if [the City] relented today and issued all of the permits [plaintiff] applied for, he still would have been injured by the treatment he allegedly received and which caused him harm." Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara, 344 F.3d 822, 830 (9th Cir. 2003).

In sum, there is a sufficient causal link between plaintiff's alleged injury and the actions of Perry and the City to establish standing, and therefore the Court has jurisdiction over plaintiff's 42 U.S.C. § 1983 claims.

### B.   Statute of Limitations

Because 42 U.S.C. § 1983 does not contain its own statute of limitations, "[a]ctions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions." Knox v. Davis, 260 F.3d 1009, 1012-13 (9th Cir. 2001) (citing Wilson v. Garcia, 471 U.S. 261, 276 (1985)). For personal injury claims in California, the statute of limitations is two years. Cal. Civ. Proc. Code § 335.1. While California law governs the length of the limitations period, federal law governs the accrual date. Lukovsky v. City and County of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|----------------------|------|------------------|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

Under <u>Carpinteria</u> and the Supreme Court's decision in <u>Nat'l R.R. Passenger Corp.</u> <u>v. Morgan</u>, 536 U.S. 101, 113 (2002), "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." <u>Id.</u> If plaintiff establishes discrete acts within the limitations period, he may use the time-barred acts as evidence to put his timely-filed claims in context. <u>Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara</u>, 344 F.3d 822, 829 (9th Cir. 2003). In determining whether an action constitutes a discrete act for statute of limitations purposes, the focus is on when the operative decision was made, not when the action was carried out. <u>RK Ventures, Inc. v. City of Seattle</u>, 307 F.3d 1045, 1058 (9th Cir. 2002) (citing <u>Chardon v. Fernandez</u>, 454 U.S. 6, 8 (1981); <u>Delaware State</u> <u>Coll. v. Ricks</u>, 449 U.S. 250, 258 (1980)). Under <u>Lukovsky</u> and subsequent Ninth Circuit case law, the relevant inquiry in determining the accrual date of a claim is "when the plaintiff knows or had reasons to know the injury which is the basis of the action." <u>Bird</u> <u>v. Dep't of Human Servs.</u>, 935 F.3d 738, 743 (9th Cir. 2019).

"The doctrine of equitable estoppel, often referred to as fraudulent concealment, is based on the principle that a party should not be allowed to benefit from its own wrongdoing." <u>Estate of Amaro v. City of Oakland</u>, 653 F.3d 808, 813 (9th Cir. 2011) (internal quotation marks and citation omitted). The doctrine "focuses primarily on the actions taken by the defendant to prevent a plaintiff from filing suit." <u>Lukovsky</u>, 535 F.3d at 1051 (quotation marks and citation omitted). The plaintiff carries the burden of pleading and proving the following elements of equitable estoppel: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." <u>Bolt v. United States</u>, 944 F.2d 603, 609 (9th Cir. 1991); <u>see also</u> <u>Lukovsky</u>, 535 F.3d at 1051-52 (noting that the requirements under California law are the same). As for the third element, "a plaintiff can know, or suspect, that she has a cause of action and still be 'ignorant of the true facts' of the case." <u>Estate of Amaro</u>, 653 F.3d at 813. Equitable estoppel bars a statute of limitations defense "when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." <u>Stitt v. Williams</u>, 919 F.2d 516, 522 (9th Cir. 1990).

When a party seeks estoppel against the government, "there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." <u>Bolt</u>, 944 F.2d at 609. Put another way, a plaintiff asserting equitable estoppel "must point to some fraudulent concealment, some active conduct by the defendant 'above and beyond the wrongdoing upon which the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|----------------------|------|------------------|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" Lukovsky, 535 F.3d at 1051-52 (quoting Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006)).

On May 26, 2020, based on the allegations in plaintiff's FAC, the Court found that plaintiff's claims accrued on October 10, 2017, the date on which plaintiff's Property was excluded from the 2017 Housing Element, which meant that the Property was not eligible for preferential rezoning. Seirafi v. City of Riverside, No. 5:19-cv-02054-CAS(KKx), 2020 WL 5223740, at *5 (C.D. Cal. May 26, 2020). Given that plaintiff's complaint was filed on October 25, 2019, this meant that plaintiff's complaint was filed after the expiration of the two-year statute of limitations period. However, on a motion to dismiss, the Court found that equitable estoppel applied based on plaintiff's allegations that "after the Housing Element was adopted, defendants expressly represented that his Project would continue to move forward" and "misrepresent[ed] [] the legal reasons for the Project's exclusion" from the Housing Element. Id. at *8.

Defendants argue that "[t]he October 1[0], 2017 Housing Element cannot be the date of accrual of Plaintiff's causes of action for two reasons: (1) differential treatment does not trigger accrual, harm/injury does, and (2) if the differential treatment in the outworking of the Housing Element governed, Plaintiff's claims accrued in October 2013." Mot. at 32. Defendants also argue that "to determine the timeliness of plaintiff's claims, the key inquiry is when the operative decision was made." Id. (citing RK Ventures Inc. v. City of Seattle, 307 F.3d 1045, 1058-1058 (9th Cir. 2002)). Under this standard, defendants argue that "it is indisputable that operative decision occurred on August 12, 2014, the harm occurred on August 12, 2014, and the causes of action accrued on August 12, 2014." Mot. at 33.

Plaintiff contends that the law of the case doctrine bars defendants from raising statute of limitations arguments that "the Court already rejected." Opp. at 16-17. Plaintiff also contends that equitable estoppel should apply because "Defendants expressly represented that the City would continue to process his submissions and move forward with approval of the Project." Id. at 17 (citing Dkt. 62-17 (A. Seirafi Depo. Vol. II) at 296:4-303:24). Finally, plaintiff argues that that equitable estoppel should apply because "in early 2018, the City Attorney falsely represented to Plaintiff's attorney that the Project was not included in the [2017] Housing Element because the pending approval on the site made it ineligible under California regulations." Opp. at 18 (citing Dkt. 62-17 (A. Seirafi Depo. Vol. II) at 184:6-185:20).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|---|---|---|---|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

In reply, defendants reiterate that "there is no admissible evidence that supports fraud or active concealment by Councilmember Perry, Kristi Smith, or any other city employee to invoke the equitable estoppel doctrine to preclude Defendants' assertion of their statute of limitations defense." Reply at 8-9 (citing SUF Nos. 10, 94). Defendants also argue that "nowhere is Councilmember Perry alleged to have precluded Plaintiff's property from being included in any housing element" and that "at no time did Councilmember Pretty convey any information concerning the status of the Application in terms of it 'moving forward' that would invoke equitable estoppel." Id. at 18-19. Defendants add that "there is no connection between the Housing Element and Plaintiff's claims against the [C]ity" because "the 2017 housing element is entirely unrelated to the City's 'policy, custom, and/or practice of permitting, condoning, and/or ratifying Councilmember Perry's involvement in' the Application." Reply at 19.

As a preliminary matter, the Court observes that "motions to dismiss do not constitute law of the case for the purpose of summary judgment. Moonin v. Nevada ex rel. Dep't of Pub. Safety Highway Patrol, No. 3:12-cv-000353-LRH-VPC, 2015 WL 4113289, at *6 (D. Nev. July 8, 2015) (citing Pearson v. Dennison, 353 F.2d 24, 28 (9th Cir.1965)); see also Robbins v. Wilkie, 433 F.3d 755, 764 (10th Cir. 2006), rev'd on other grounds, 551 U.S. 537 (2007) (internal quotation marks omitted) ("Law of the case does not apply because a motion to dismiss and a motion for summary judgment do not raise the same issues.").

While on defendants' motion to dismiss plaintiff's FAC, the Court found that, as a pleading matter, plaintiff adequately alleged that his claims accrued on October 10, 2017, on summary judgment, the evidence before the Court suggests that plaintiff's claims accrued on August 12, 2014, when plaintiff's development application was approved with the allegedly discriminatory conditions. At his deposition, Seirafi stated that the conditions to the August 12, 2014 approval represented an obvious economic harm to the Project, and that plaintiff was aware of the economic harm at the time of the approval. Dkt. 61-23 (A. Seirafi Depo. Vol. I) at 37:9-39:12. Given that a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action," the Court finds that August 12, 2014, is the date on which plaintiff's claims accrued. See Lukovsky, 535 F.3d at 1048 (9th Cir. 2008). Moreover, on the evidence before it on summary judgment, the Court the 2017 Housing Element is not relevant to plaintiff's claims in this litigation. Rather, plaintiff's claims are focused on defendants' allegedly disparate treatment in connection with his property development application, and not the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|----------------------|------|------------------|
| Title    | Mohamed Seirafi v. City of Riverside et al | | |

inclusion or exclusion of plaintiff's proposed development in the 2013 or 2017 Housing Elements.

If plaintiff's claims accrued on August 12, 2014, plaintiff's claims were barred by August 12, 2016, under the applicable two-year limitations period. If so, plaintiff's equitable estoppel argument, which is based on Ted White's statements in 2017 and the City's representations in early 2018, appears to be problematic. See Opp. at 16-18. For this reason, at the December 13, 2021 hearing, the Court ordered additional briefing from the parties regarding whether plaintiff's claim accrued on August 12, 2014, and, if so, whether there is any evidence prior to August 12, 2016 suggesting defendants are equitably estopped from asserting a statute of limitations defense.

In plaintiff's supplemental brief, plaintiff does not argue that his claims accrued later than August 12, 2014. Rather, plaintiff argues that "Defendants' false assurances that the project was moving forwarded dissuaded Plaintiff from filing suit." Plf's Supp. at 2. Plaintiff points to meetings that took place on November 15, 2015, and possibly March 2016, in conjunction with Perry's admissions in his deposition that he believed that plaintiff was not going to be able to fit a gas station, housing, retail space, and a park on the Property, as giving rise to a claim that defendants should be equitably estopped from asserting a statute of limitations defense. Id. at 2-3; see also Dkt. 67-5 (Perry Depo.) at 99:7-21. Plaintiff also points to a draft development agreement provided by plaintiff's representative Hunt to the City on July 28, 2016. Id. at 3; see also Dkt. 67-9. The rest of plaintiff's evidence relates to statements and events occurring after August 12, 2016, when the statute of limitation would have otherwise run.

The Court finds that Perry's alleged failure to share his opinion regarding the practicability of developing a gas station, housing, retail space, and a park on the Property did not serve to conceal from plaintiff what plaintiff already knew and believed by reason of the conditions made known to him on August 12, 2014, nor does it suggest that plaintiff was ignorant of the true facts regarding the practicability of his development application. Rather, at his deposition, Seirafi testified that the conditions to the August 12, 2014 approval, including the reduction of the number of units allowed and the inclusion of a one-acre park, represented an obvious economic harm to the Project, and that plaintiff was aware of the economic harm at the time of the conditional approval because he is financially savvy. Dkt. 61-23 (A. Seirafi Depo. Vol. I) at 37:9-39:12. Moreover, with respect to Perry, Seirafi testified that Perry "never assured [him]" at any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|------------------------|------|-------------------|
| Title    | Mohamed Seirafi v. City of Riverside et al | | |

time that the project was going through the process. Dkt. 61-24 (A. Seirafi Depo. Vol. II) at 295:19-24. Additionally, the evidence does not suggest defendants took any actions or made any representations at the November 15, 2015 meeting that prevented plaintiff from timely filing suit. Rather, email correspondence between City employees following that meeting reflects that, at the meeting, the City's Director of Community and Economic Development, Emilio Ramirez, told plaintiff that he "felt . . . a park of less than an acre would be a deal breaker." Dkt. 62-7 at 3-4.

In sum, the Court finds that plaintiff's claims accrued on August 12, 2014, and that plaintiff's claims were barred by August 12, 2016, pursuant to the applicable two-year limitations period, because, despite the Court's request for evidence and supplemental briefing regarding what induced plaintiff to delay in filing suit, plaintiff has not set forth evidence of any statements of conduct by defendants that occurred prior to August 12, 2016 "pointing to some fraudulent concealment, some active conduct by the defendant[s] 'above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" Lukovsky, 535 F.3d at 1052 (quoting Guerrero v. Gates, 442 F.3d 697, 706 (9th Cir. 2006)).

Accordingly, the Court **GRANTS** defendant Perry's motion for summary judgment on the basis that plaintiff's claims are time-barred. As such, the Court need not address plaintiff's 42 U.S.C. § 1983 claims against Perry, nor his claim for punitive damages against Perry.

### C.   Monell Claim

Plaintiff also brings a Monell claim against the City of Riverside. FAC ¶¶ 50-54. A municipal defendant cannot be held liable for a Section 1983 violation caused by an individual employee's actions on a *respondeat superior* theory. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978); see also Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*"). Rather, under Monell, municipal liability must be based on enforcement of a municipal policy or custom that causes a plaintiff to be deprived of a constitutional right, not merely on the municipality's employment of a constitutional tortfeasor. Monell, 436 U.S. at 691.

Generally, a plaintiff can demonstrate municipal liability for a constitutional violation in one of three ways. First, he can show that a person or entity with final

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
| Title | Mohamed Seirafi v. City of Riverside et al | | |

decision- or policy-making authority within the municipality expressly adopted or
executed an unconstitutional policy or gave an unconstitutional order.  See id. at 694;
Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).  Second, a plaintiff can prove
that his injury was the result of a municipal custom, i.e., a practice "so permanent and
settled" as to constitute a "custom or usage" of the municipal defendant.  See Monell, 436
U.S. at 691; see also Pembaur, 475 U.S. at 481-82 n.10.  Finally, a local governmental
body may be liable if its failure to train employees has caused a constitutional violation
and the failure to train amounts to deliberate indifference to the rights of individuals with
whom those employees come into contact.  See City of Canton v. Harris, 489 U.S. 378,
388-89 (1989).

"To prevail on a § 1983 claim against a local government under Monell, a plaintiff
must satisfy a three-part test: (1) an official violated the plaintiff's constitutional rights;
(2) the violation is a part of [a] policy or custom and may not be an isolated incident; and
(3) there is a nexus between the specific policy or custom to the plaintiff's injury."
Harper v. City of San Jose, No. CV 09-05758 JW, 2011 WL 7109218, *3 (N.D. Cal. Mar.
7, 2011) (citing Monell, 436 U.S. at 690-92).

Defendants argue that "[t]he city's official, adopted charter, municipal policies,
ordinances, and resolution were well-defined and publicly accessible," and that "[t]hese
rules and laws were properly followed by City staff and Councilmember Perry."  Mot. at
34.  Accordingly, defendants argue that "[t]here are no facts to support the existence of
an unconstitutional policy" or "a widespread, longstanding policy, practice, and/or
custom that amounted to deliberate indifference to Plaintiff's equal protection rights."  Id.

In opposition, plaintiff argues that "the record contains evidence that the City has a
policy, custom, and/or practice of permitting, condoning, and/or ratifying
Councilmember Perry's involvement and oversight of development projects in Ward 6 in
a manner that resulted in the intentional differential treatment of Plaintiff."  Opp. at 20.
Moreover, plaintiff argues that "the City condoned and ratified Councilmember Perry's
insistence upon a meeting to discuss the Project, reduction in the size of the senior
housing building, inclusion of a one-acre park, and making Plaintiff's application
contingent upon these ancillary conditions and a development agreement, despite such
concessions not being required of similarly situated projects."  Id. at 21.  In sum, plaintiff
claims that "[t]here [is] ample evidence in the record the Councilmember Perry exceeded
his authority to exert undue influence on City Staff to Plaintiff's detriment."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　**'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|---|---|---|---|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

In reply, defendants argue that "Plaintiff has not offered evidence of one instance where Councilmember Perry acted in noncompliance" with the City's rules and procedures concerning land use applications.  Reply at 20.  They add that "[t]here is no evidence that Councilmember Perry interfered with, delayed, or stopped the Application in the formal application process."  Id.

Plaintiff fails to submit evidence that raises a genuine issue of fact regarding whether the alleged violation of his equal protection rights is a part of a policy or custom on the part of the City of Riverside, and not an isolated incident.  See Harper, 2011 WL 7109218 at *3.  Rather, the evidence submitted by plaintiff in connection with equal protection claims against Perry undermine his Monell claim, as plaintiff's "class of one" equal protection claim describes unique treatment and substantially relies upon evidence that the public park requirement was a condition placed *only* upon his property development.

Plaintiff has also failed to submit evidence that raises a genuine issue of fact regarding whether the City failed to adequately train Perry, or that it expressly adopted or executed an unconstitutional policy or gave an unconstitutional order.  With respect to plaintiff's argument that the City condoned Perry's actions, such as Perry's "making Plaintiff's application contingent upon [] ancillary conditions . . . despite such concessions not being required of similarly situated projects" (Opp. at 21), plaintiff's argument fails to raise a colorable Monell claim.  See Pembaur, 475 U.S. at 483 ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

Accordingly, the Court **GRANTS** defendants' motion for summary judgment of plaintiff's Monell claim.

/ / /

/ / /

/ / /

/ / /

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 5:19-cv-02054-CAS-KKx | Date | January 26, 2021 |
|----------|------------------------|------|-------------------|
| Title | Mohamed Seirafi v. City of Riverside et al | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion for summary judgment.  Defendants must submit a Proposed Judgment that coincides with the Court's order by **February 7, 2021**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |